CENTRAL NATIONAL BANK, Appellant, v. HEYMAN LEVIN,
Respondent.

### February 18, 1879.

1. The knowledge possessed by a bank-president or acquired by him in connection with the discount of a note is the knowledge of the bank, and his accidental absence at a particular time is no legal excuse for the failure of the bank to act upon such knowledge.
2. Facts reviewed showing a want of due diligence in notifying an indorser of dishonor of a note.

APPEAL from St. Louis Circuit Court.

*Affirmed.*

W. L. SCOTT and D. W. WEAR, for appellant.

HAYDEN, J., delivered the opinion of the court.

This is a suit against the defendant as indorser upon a promissory note made by one Crafton to the defendant's order. The note was indorsed by the defendant, and then, for collection, by the cashier of the plaintiff to the cashier of a bank at St. Louis. At the time of maturity the defendant lived at St. Louis, and this fact was known to the notary who protested the note. The question is whether the defendant was duly notified of the dishonor of the note ; and in regard to this facts were found by the court below as follows : —

" The note in controversy was presented for payment on the day of maturity, to wit, June 23, 1876, and payment demanded, and was duly protested, and notices thereof in due form for the defendant and plaintiff were deposited in the post-office at St. Louis, Mo., postage prepaid, in one envelop, addressed to the plaintiff at Boonville, Mo. Plaintiff received said notices at Boonville, on the 26th of June, 1876, and on that day enclosed the notice for defendant in an envelop addressed to him at St. Louis, Mo., and enclosed said envelop in another envelop addressed to Joseph L. Stephens, St. Louis, Mo., and deposited it

in the post-office at Boonville, Mo., with instructions to Joseph L. Stephens to deliver the enclosed notice to defendant.

" Plaintiff's cashier, who mailed the notice for Levin to J. L. Stephens, did not know Levin's place of residence at the time, and after making inquiries at Boonville was unable to ascertain his residence ; he therefore sent the notice as last stated, to J. L. Stephens. Joseph L. Stephens deposited the notice enclosed to him and addressed to the defendant in the mail-box at the Lindell Hotel in St. Louis, Mo., and the letter was in the post-office at about 11 A. M., June 28, 1876, and defendant received the same the following day, June 29, 1876, at his office in St. Louis, Mo., through the mail.   The notice was deposited at the Lindell Hotel, in the mail-box, postage prepaid, in the same condition as when it left Boonville, addressed simply, ' Heyman Levin, St. Louis, Mo.'   During the year 1876, letters mailed at Boonville, Mo., and addressed to St. Louis, Mo., in the regular course of mail reached their destination the following day ; the same was the case with letters mailed at St. Louis, addressed to Boonville, Mo.   In June, 1876, Heyman Levin had an office for the transaction of business on the corner of Fifth and Market Streets, St. Louis, Mo., and for several years preceding had an office at the same place, and was a well-known business man, and was known to the notary who protested the note.

" In the city of St. Louis, Mo., mail matter, both local and foreign, was customarily delivered at offices and places of business in that part of the city where defendant had his office in June, 1876, by mail-carriers in the employ of the United States, and such delivery was made as often as two or three times a day.   Joseph L. Stephens was plaintiff's president at the time it discounted the note, and took the note for discount, and knew at the time that Levin was a business man doing business in St. Louis, Mo., and discounted the note on defendant's credit.

" On the above facts, the court declares that inasmuch as plaintiff transmitted the notice for defendant to said Joseph L. Stephens, and the same did not reach the defendant until June 29, 1876, the defendant was discharged, and verdict and judgment must be entered in his favor."

Waiving other questions that might arise on these facts, the conclusion of the trial court was correct upon the grounds on which it was placed. It appears that the president of the bank knew when the bank discounted the note that the defendant was in business at St. Louis, and discounted the note on his credit. The bank, then, must be presumed to have known that the defendant did business at St. Louis on June 26, 1876, when it received the notices at Boonville. If so, the fact that the cashier made inquiries as to the defendant's residence is not to the purpose. He need have made no inquiries if the agent having the knowledge had communicated it to his principal. That knowledge the president possessed, or acquired in connection with the discount. It is argued that this knowledge had no relevancy to the matter of the discount, and therefore was not the plaintiff's knowledge. But the contingency of the dishonor of the note was the plaintiff's affair, and the obligation was upon it to act in view of this contingency if it wished to hold the indorser. The fact that the notice was not sent by the plaintiff directly to the defendant was undoubtedly due to the absence of the president of the plaintiff; but the accidental absence of an agent, which thus deprives the principal of the immediate benefit of the agent's knowledge, cannot serve as a legal excuse for the non-performance of a duty upon which a right of recovery depends.

With the argument of plaintiff, grounded upon what is assumed to be the consequences that would have taken place if the notice to the defendant had been directly sent to him by mail from Boonville, we are not here concerned. The legal obligation in such cases as the present does not depend

upon the possible results of its performance; nor can we review here the conclusions of fact at which the trial court arrived.

The judgment is affirmed, all the judges concurring.